JAMES W. SESSIONS, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 19624

March 27, 1990                                        789 P.2d 1242

*Terri Steik Roeser*, State Public Defender, *Janet S. Bessemer*, Deputy Public Defender, Carson City, for Appellant.

---

*Brian McKay,* Attorney General, Carson City; *Philip H. Dunleavy, District Attorney, George B. Deuel,* Chief Deputy District Attorney, Nye County, for Respondent.

## OPINION

*Per Curiam:*

Following an investigation, sheriff's officers in Nye County obtained and served a search warrant on property in Pahrump which belonged to appellant James William Sessions. Inside a barrier of junk appliances the officers found two greenhouses and seized 761 plants, a small box and several baggies of marihuana. The plants were weighed whole, then destroyed. The weight of the marihuana was determined to be 540 pounds.

Based on the plants seized, Sessions was charged with trafficking in marihuana weighing over 100 pounds in violation of NRS 453.339. Based on the contents of the box, Sessions was charged with possession of marihuana in violation of NRS 453.336. Sessions was also charged with being a habitual criminal in violation of NRS 207.010 based on a 1959 Texas conviction for theft of property valued at over fifty dollars, a 1963 California

conviction for grand theft, and a 1965 California conviction for escape without the use of force. Sessions was found guilty and sentenced to the maximum penalty on all three charges. He received a twenty-year sentence and a twenty-five thousand dollar fine for trafficking; a concurrent six-year sentence and a five thousand dollar fine for possession; and a sentence of life without the possibility of parole for being a habitual criminal.

On appeal, Sessions contends, *inter alia,* that the trafficking conviction cannot stand because the weight of the marihuana was improperly determined and the evidence was subsequently destroyed. Sessions also contends that the habitual criminality conviction cannot stand because it was an abuse of discretion to base a determination of habitual criminality on prior convictions well over twenty years old. We agree, and order these two convictions reversed.

## I

On October 23, 1987, the district court ordered that the evidence be weighed and, but for a small amount necessary for analysis, destroyed. That same day, the evidence was weighed and destroyed. The marihuana plants were weighed whole—no attempt was made to remove the leaves from the stalks, stems, roots or attached dirt prior to weighing. A hearing was held on October 26, 1987, at which the weight of the marihuana was determined to be 540 pounds. This determination was reached improperly and warrants reversal of the trafficking conviction.

Pursuant to NRS 453.096, marihuana is defined as follows:

1. "Marihuana" means:

(a) *All parts of any plant of the genus Cannabis,* whether growing or not;

(b) The seeds thereof;

(c) The resin extracted from any part of the plant; and

(d) Every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin.

2. "Marihuana" *does not include the mature stems of the plant,* fiber produced from the stems, oil or cake made from the seeds of the plant, any other compound, manufacture, salt, derivative, mixture or preparation of the mature stems (except the resin extracted therefrom), fiber, oil or cake, or the sterilized seed of the plant which is incapable of germination.

(Emphasis added.)

Sessions contends that the stems, stalks, and attached dirt do not fall within the definition of "marihuana" as set forth in NRS

453.096(2). He further contends that by determining the weight of the marihuana based on the whole plant, rather than on just the leaves and buds, the weight of the evidence was arrived at improperly. The state, relying on NRS 453.096(1), argues that the weight was properly determined because the definition includes *all* parts of the plant.

As we read the statute, subsection 2 of the statute excludes stems from the definition of marihuana and serves to modify and limit the all-inclusive definition provided in subsection 1. Even if there is any doubt as to the relationship between NRS 453.096(1) and NRS 453.096(2), that doubt must be resolved in favor of the accused. Dumaine v. State, 103 Nev. 121, 125, 734 P.2d 1230, 1233 (1987); Sheriff v. Hanks, 91 Nev. 57, 60, 530 P.2d 1191, 1193 (1975). Therefore, the state's argument that "marihuana" includes stems, roots, dirt, etc. is incorrect.

Furthermore, the trafficking statute in effect at the time contained no provisions specifying whether "marihuana" included all parts of the plant or included a mixture containing marihuana. NRS 453.339 at the time read:

> any person . . . who is knowingly or intentionally in actual or constructive possession of marihuana shall be punished, if the quantity involved:
>
> 1. Is 100 pounds or more, but less than 2,000 pounds, by imprisonment in the state prison for not less than 3 years nor more than 20 years and by a fine of not less than $25,000.[1]

We note that this statute is in contrast to the corresponding

---

[1]This statute has subsequently been amended to include the following: "For the purposes of this section: (a) 'Marihuana' means all parts of any plant of the genus Cannabis, whether growing or not." NRS 453.339(2) (as amended 1989). Thus, under the new statute, the method used in this case to weigh the marihuana might very well be proper; however, that question is not presently before us.

At oral argument, the state raised the argument that this subsequent addition simply makes clear pre-existing legislative intent to include the entire plant in the definition of "marihuana" under the trafficking statute. However, the statute in effect at the time simply referred to "quantity," and the definition of marihuana (which has not changed) both *includes* "all parts" of the plant and *excludes* "mature stems." *Contrast* NRS 453.096(1) *with* NRS 453.096(2). Based on the statutory definition of marihuana, the trafficking statute was clear; at most, it was ambiguous. Thus, even if the legislature did intend that a trafficking charge be based on "all parts" of the marihuana plant, that intent was not manifested on the face of the statute. Because ambiguities must be liberally construed in favor of the accused, Sheriff v. Lang, 104 Nev. 539, 542, 763 P.2d 56, 58 (1988), the argument that the prior statute was intended to include the entire plant is without merit.

statutes defining trafficking in Schedule I and Schedule II substances, which base the weight on the controlled substance "or any mixture which contains any such controlled substance." *See* NRS 453.3385 (Schedule I substances) and NRS 453.3395 (Schedule II substances). Consequently, to determine properly the weight of marihuana to support a trafficking conviction, the weight must be determined excluding the stems, dirt, etc. Because that was not done in this case, the weight of the marihuana was arrived at in error.

We hold that the error was prejudicial because the improperly determined weight, 540 pounds, was the basis for Sessions' conviction for trafficking based on possession of 100 pounds or more of marihuana. Moreover, the error cannot be cured because the evidence was destroyed. The state contends that it is mere speculation for Sessions to claim that the marihuana might have weighed less than 100 pounds had it been properly weighed. Yet it was not the defendant's burden to establish the weight of the evidence; the state bears the burden of proving, beyond a reasonable doubt, each element of the crime. NRS 175.191. The record is devoid of evidence which would indicate that the plants, properly weighed, would have weighed more than 100 pounds. Having failed to meet its burden, and having failed to preserve the evidence, the state should not be allowed to benefit from its error. Sparks v. State, 104 Nev. 316, 319, 759 P.2d 180, 182 (1988). We therefore reverse the trafficking conviction.

## II

Sessions was adjudged to be a habitual criminal and was sentenced to the maximum penalty of life without the possibility of parole. NRS 207.010(2). The determination of habitual criminality was based on a 1959 Texas conviction for theft of property valued at over fifty dollars, a 1963 California conviction for grand theft, and a 1965 California conviction for escape without the use of force. We hold that this determination constitutes an abuse of discretion and warrants reversal of the habitual criminality conviction.

Pursuant to NRS 207.010(4), the trial judge has discretion to dismiss counts brought under the habitual criminal statute. The purpose of this section is to permit dismissal "when the prior offenses are stale or trivial, or in other circumstances where an adjudication of habitual criminality would not serve the purposes of the statute or the interests of justice." French v. State, 98 Nev. 235, 237, 645 P.2d 440, 441 (1982).

Sessions maintains that because the prior convictions in support of the habitual criminal charge were all well over twenty

years old, they are too stale to support his conviction. He persuasively argues that because these convictions are so remote, the district court abused its discretion.

The state points out that the statute contains no time limits, and invites this court to uphold the conviction based on Curry v. Slansky, 637 F.Supp. 947, 951-52 (D.Nev. 1986), in which the federal district court determined that a prior conviction which was nearly twenty years old was not too remote to be used to enhance a conviction under the habitual criminality statute. We decline the state's invitation.

This court is not bound to follow a decision of the federal district court regarding Nevada law. *See* State v. Smith, 99 Nev. 806, 810, 672 P.2d 631, 634 (1983). Moreover, *Curry* is distinguishable. In *Curry,* the convictions used to support a finding of habitual criminality at the time ranged from nineteen years old to only eight years old, and some involved violent crimes. *Curry,* 637 F.Supp. at 951. In this case, the convictions used to support the finding of habitual criminality ranged from twenty-three to nearly thirty years old, and were for non-violent crimes. Our habitual criminality statute exists to enable the criminal justice system to deal determinedly with career criminals who pose a serious threat to public safety. *See* Odoms v. State, 102 Nev. 27, 32-33, 714 P.2d 568, 571-72 (1986). Sessions' past conduct, though reprehensible, simply does not warrant the harsh sanction available under the habitual criminality statute.

Under the circumstances, it was an abuse of discretion for the district court to adjudge Sessions a habitual criminal and to impose the maximum sentence. Surely a case involving crimes less violent and more stale than presented here would be hard to find; hence, the adjudication of habitual criminality in this case serves neither the purposes of the statute nor the interests of justice. *French,* 98 Nev. at 237, 645 P.2d at 441. We therefore reverse.

In light of the above, we need not discuss Sessions' other assignments of error. Accordingly, we affirm the conviction for possession and reverse the convictions for trafficking and habitual criminality.