946 P.2d 148 (1997)
Richard TANKSLEY, Appellant,
v.
The STATE of Nevada, Respondent.
No. 27264.
Supreme Court of Nevada.
August 28, 1997.
Dissent As Amended September 17, 1997.
*149 Mark B. Jackson, Gardnerville, for Appellant.
Frankie Sue Del Papa, Attorney General, Carson City; Noel S. Waters, District Attorney, and Robert F. Bony, Deputy District Attorney, Carson City, for Respondent.

OPINION
YOUNG, Justice.
While awaiting trial on charges of extortion and obtaining money under false pretenses ("the extortion case"), appellant Richard Tanksley ("Tanksley") was incarcerated in the Carson City jail. On October 30, 1993, the jail deputies attempted to give Tanksley his dinner meal. According to the deputies, Tanksley refused to take his meal and, when instructed, refused to return to his cell. Tanksley was then physically restrained and placed in a solitary lockdown cell. Shortly thereafter, a deputy saw smoke coming from Tanksley's lockdown cell. While the remainder of the inmates in the cell block were being evacuated, a deputy saw Tanksley in his cell, lying on his stomach and yelling "Fire!" Tanksley was removed from his cell, and the deputies identified the source of the smoke as Tanksley's mattress, which had been cut open, the stuffing pulled out, and set afire. Tanksley was subsequently charged with one count of arson.
Attorney Sharon Claassen ("Claassen"), Tanksley's court-appointed attorney in the extortion case, was also appointed as Tanksley's counsel in the instant case. Claassen was permitted to withdraw from both cases based on the fact that Tanksley refused to communicate or cooperate with her. The trial court then appointed attorney Erik Johnson ("Johnson") as Tanksley's attorney for both cases. Johnson was permitted to withdraw from the arson case based on a conflict of interest. The trial court then appointed attorney Nathan Young ("Young") as Tanksley's counsel in the arson case.
Tanksley's extortion case went to trial on February 21, 1995. Johnson, who at that time was still Tanksley's counsel, informed the court that Tanksley did not want assistance of counsel. After canvassing Tanksley, the district court granted Tanksley's motion to waive representation by counsel and allowed Tanksley to represent himself at trial.
In the instant case, Young filed a motion on March 3, 1995, twelve days prior to the commencement of the arson trial, seeking to withdraw as counsel on the grounds that Tanksley would not communicate or cooperate with him and that Tanksley wished to represent himself. The district judge denied the motion, stating:
This Court in the prior trial which was last month observed the Defendant's conduct *150 in representing himself and to say the least it was pathetic and it was disruptive.
Furthermore, the district court concluded that Tanksley had been given ample opportunity to retain private counsel and failed to do so, that the court had appointed counsel for Tanksley three times (Claassen, Johnson, and Young), and that Tanksley had refused to cooperate with both Claassen and Young (Johnson withdrew based on a conflict of interest).
At the conclusion of the trial, Tanksley was found guilty of first degree arson. The judge adjudicated him a habitual criminal pursuant to NRS 207.010 and sentenced him to life in prison with the possibility of parole. Tanksley now appeals his conviction and sentence. We conclude that Tanksley's arguments have no merit and affirm the judgment below.

Right to self-representation
Tanksley contends that his right to self-representation was violated when the district court denied his request to act as his own attorney at his arson trial.[1]
A criminal defendant has an "unqualified right" to represent himself at trial so long as his waiver of counsel is intelligent and voluntary. Baker v. State, 97 Nev. 634, 636, 637 P.2d 1217, 1218 (1981) (citing Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)), overruled on other grounds by Lyons v. State, 106 Nev. 438, 796 P.2d 210 (1990). In assessing a waiver, the question before the district court is not whether the defendant can competently represent himself, but whether he can knowingly and voluntarily waive his right to counsel. "[T]he defendant's technical knowledge is not the relevant inquiry. In order for a defendant's waiver of right to counsel to withstand constitutional scrutiny, the judge need only be convinced that the defendant made his decision with a clear comprehension of the attendant risks." Graves v. State, 112 Nev. 118, 124, 912 P.2d 234, 238 (1996) (citing Faretta, 422 U.S. at 835-36, 95 S.Ct. at 2541-42). Furthermore, "a request for self-representation may not be denied solely because the court considers the defendant to lack reasonable legal skills or because of the inherent inconvenience often caused by pro se litigants." Lyons, 106 Nev. at 444 n. 1, 796 P.2d at 217 n. 1.
However, a defendant may be denied his right to self-representation where his request is untimely, the request is equivocal, the request is made solely for the purpose of delay, the defendant abuses his right by disrupting the judicial process, or the defendant is incompetent to waive his right to counsel. Lyons, 106 Nev. at 443-44, 796 P.2d at 213.
Here, the district court denied Tanksley his request to represent himself because he was disruptive. A defendant may be denied his right of self-representation if he or she is unable or unwilling to abide by rules of courtroom procedure. Savage v. Estelle, 924 F.2d 1459, 1464 (9th Cir.1990); see also McKaskle v. Wiggins, 465 U.S. 168, 173, 104 S.Ct. 944, 948, 79 L.Ed.2d 122 (1984). A defendant's "right to self-representation does not allow him to engage in uncontrollable and disruptive behavior in the courtroom." United States v. Flewitt, 874 F.2d 669, 674 (9th Cir.1989). Trial judges have the obligation to control courtroom proceedings. Howard v. State, 106 Nev. 713, 724, 800 P.2d 175, 181 (1990) (Steffen, J., dissenting). In determining disruption, the defendant's pretrial activity is relevant "if it affords a strong indication that the defendants will disrupt the proceedings in the courtroom." Flewitt, 874 F.2d at 674.
In the present case, the lower court judge had the opportunity to observe Tanksley's demeanor and conduct throughout these proceedings and was in the best position to determine if Tanksley was disruptive. While "[t]he cold record is a poor substitute for demeanor observation," Graves, 112 Nev. at 124, 912 P.2d at 238, we conclude that the record supports the district court's determination. For example, at a September 27, 1994 status hearing, Tanksley talked back to the judge and behaved so disrespectfully and contemptuously that the judge found him in contempt and was forced to tape Tanksley's *151 mouth shut for the remainder of the hearing. The judge further warned Tanksley that if he behaved the same way at another appearance, the judge would tape his mouth shut again. This court will not substitute its evaluation for that of the district court judge's own personal observations and impressions. Kobinski v. State, 103 Nev. 293, 296, 738 P.2d 895, 896 (1987). Therefore, if the district court decided that Tanksley's pretrial activity was a strong indication that Tanksley's self-representation would disrupt the arson trial, we will not overturn that factual determination.
Additionally, when the lower court denied Tanksley's request, it stated that Tanksley's self-representation in the extortion trial was disruptive. The extortion trial concluded only one week prior to the filing of the motion for Tanksley's counsel to withdraw. The judge made his ruling on the matter only nineteen days after the extortion trial ended. Plus, during the course of both the extortion and the arson cases, the judge conducted some hearings on both matters at the same proceeding. Because the two cases were so intertwined, we cannot expect the judge to completely block from his mind related information and impressions he obtained in an associated judicial proceeding. See Goldman v. Bryan, 104 Nev. 644, 653, 764 P.2d 1296, 1301 (1988) (holding that a judge's knowledge and awareness of facts acquired through participation in a related judicial proceeding, while acting in one's official judicial capacity, does not require disqualification from a subsequent proceeding).
Accordingly, we conclude that Tanksley's right to self-representation was not violated.

Juror misconduct
During deliberations, the jury voted on the case and eleven jurors voted guilty, while one juror, Dave Bacon ("Bacon"), voted not guilty. During a dinner break shortly after this vote, Bacon went home, ignited some mattress stuffing to test if it was flammable, and upon returning from the break informed the jury that the mattress stuffing ignited immediately.
The jury continued to deliberate. Another vote was taken with the same results as prior to the break; Bacon was the only juror to vote not guilty. Shortly thereafter, Bacon left the jury room for approximately ten minutes. Apparently, during his absence, the other jurors discussed the possibility of contacting the judge if Bacon returned with a not guilty verdict. Two juror affidavits stated that Bacon was unaware of the jury's intent to inform the judge of Bacon's misconduct.
When Bacon returned to the jury room to continue deliberations, another vote was taken wherein all twelve jurors voted guilty.
On April 6, 1995, Tanksley filed a motion for a new trial premised on the juror misconduct. The district judge denied the motion, stating that the misconduct was harmless beyond a reasonable doubt.
"Not every incidence of juror misconduct requires the grant of a new trial." Barker v. State, 95 Nev. 309, 313, 594 P.2d 719, 721 (1979). This court has held that a new trial need not be granted if it appears beyond a reasonable doubt that no prejudice occurred. Id. Such a determination is a question of fact for the court and will not be reversed on appeal absent an abuse of discretion. McCabe v. State, 98 Nev. 604, 608, 655 P.2d 536, 538 (1982).
We conclude that the district court did not err by concluding the juror misconduct was harmless beyond a reasonable doubt. Our dissenting colleague states, "It seems probable to me that the juror's independent test on the mattress stuffing influenced his vote, and it may have reinforced the opinion of the other jurors when he communicated the test results to them." With all due respect, we conclude it is improbable that the juror's test had the supposed effect the dissent contemplates.
First, after Bacon had performed the experiment, the results of which reinforced the State's case, Bacon again voted not guilty when he returned from the dinner break. It was only after further deliberations that Bacon changed his vote to guilty. Therefore, the experiment seemed to play no role in Bacon's decision.
*152 Second, prior to the experiment, eleven other jurors voted guilty. Therefore, Bacon's experiment did not induce any of the jurors to change their vote to guilty. Accordingly, we conclude the misconduct did not prejudice Tanksley and the district court did not err in denying Tanksley's motion for a new trial.

Adjudication as a habitual criminal
Based on the fact that Tanksley had three prior felonies, the district court adjudicated Tanksley a habitual criminal pursuant to NRS 207.010 and sentenced him to life in prison with the possibility of parole. Tanksley was convicted of criminal mischief[2] in 1977, aggravated assault[3] in 1982, and being an ex-felon in possession of a firearm in 1990. Tanksley appeals his status as a habitual criminal, contending that his prior three felonies are old and stale, and two of the prior convictions are non-violent.
We have held, "One facing adjudication as a habitual criminal ... is at the mercy of the court and is thus subject to the broadest kind of judicial discretion." Clark v. State, 109 Nev. 426, 428, 851 P.2d 426, 427 (1993) (emphasis added). The statute contains no express limitation on the judge's discretion. French v. State, 98 Nev. 235, 237, 645 P.2d 440, 441 (1982).
The purpose of the habitual criminal statute is to increase sanctions for the recidivist and to discourage repeat offenders. Odoms v. State, 102 Nev. 27, 32, 714 P.2d 568, 571 (1986). Tanksley was convicted of three prior felonies and, therefore, fulfills the requirements of NRS 207.010. Accordingly, we conclude that the district court did not abuse its very broad discretion in determining that a habitual criminal adjudication would serve the purpose of discouraging this repeat offender.
We have considered Tanksley's other issues on appeal and find them to be without merit. Accordingly, we affirm Tanksley's judgment of conviction.
SHEARING, C.J. and MAUPIN, J., concur.
ROSE, Justice, with whom SPRINGER, Justice, joins, dissenting:
I dissent because I believe the jury verdict was infected by juror misconduct, there were insufficient grounds to strip Tanksley of his right to self-representation, and that Tanksley was improperly sentenced as a habitual criminal.
One juror had doubts about Tanksley's guilt apparently because he was not convinced the bed stuffing in Tanksley's cell could have been flammable. During the dinner recess, the juror ignited some mattress stuffing he had at home and found that it caught fire easily. When deliberations resumed, he informed the other jurors of the test, and shortly thereafter he changed his vote from not guilty to guilty. A unanimous guilty verdict was returned soon thereafter.
In Rowbottom v. State, 105 Nev. 472, 779 P.2d 934 (1989), a juror in a murder case conducted her own independent investigation into whether the victim could have exited the vehicle with her hands bound as the state claimed, and she also measured the driving times between locations to determine if the defendant had time to return to his apartment and obtain the murder weapon and ligatures before meeting the victim. The juror also examined gravel at the scene and compared it with gravel in photos taken when the victim's body was discovered. While the juror did not disclose the independent tests she conducted to the other jurors in the guilt phase, we reversed the entire case because the extra-judicial investigations may well have influenced her vote. As we explained:
Even if the offending juror did not disclose her conclusions to the others during the guilt phase, she returned to and participated *153 fully in the jury deliberations while being influenced, in whole or in part, by her out of court investigations. We cannot say beyond a reasonable doubt that in so participating she did not inject opinions developed as a result of her particularly egregious misconduct and thus infect the other jurors in their deliberations.
Id. at 486-87, 779 P.2d at 943 (footnote omitted). "Our judicial system guarantees every defendant a fair trial with impartial jurors deciding a case only on admissible evidence presented in court. Conduct which erodes these basic tenets will be presumed prejudicial." Id.
It seems probable to me that the juror's independent test on the mattress stuffing influenced his vote, and it may have reinforced the opinion of the other jurors when he communicated the test results to them. We have no idea whether the mattress stuffings were similar or equally flammable and thus cannot determine the reliability of the stuffings' comparison. I cannot say that the independent test was harmless beyond a reasonable doubt, and following the Rowbottom precedent, I would reverse and remand for a new trial on this ground.
Additionally, Tanksley had requested the right to represent himself at trial. He had been given this right in his first trial on other charges (extortion) that preceded this trial by several weeks. When denying Tanksley's request, the district court stated that Tanksley's self-representation in the earlier extortion case was "pathetic," "disruptive," "selfdefeating," and "ineffective." The district court denied Tanksley his right to represent himself in the arson case based solely on his conduct in the extortion case. While a defendant's right to self-representation can be denied because he or she was or is unduly disruptive, I find insufficient evidence to support the district court's denial on this basis.
The district court gave no specific examples of why Tanksley's representation in the extortion case warranted a ruling denying him his right to self-representation in the arson case. Furthermore, neither the district court nor the parties incorporated the extortion case's trial transcript into the record in the arson case. As such, there is nothing in the record in the arson case to support the district court's ruling. At the September 27, 1994 status hearing, Tanksley disagreed with the district court; however, his conduct was hardly so disrespectful and contemptuous as to warrant denial of his right to self-representation. Three of the district court's bases for denying Tanksley's motion to represent himself"pathetic," "ineffective," and "self-defeating"are clearly irrelevant pursuant to Lyons v. State, 106 Nev. 438, 444 n. 1, 796 P.2d 210, 217 n. 1 (1990). Therefore, disruption was the only valid basis for the district court's decision, and I believe that Tanksley's disruption alone was insufficient to deny him his constitutional right to self-representation.
Illinois v. Allen, 397 U.S. 337, 346, 90 S.Ct. 1057, 1062, 25 L.Ed.2d 353 (1970), clearly explains that behavior will be considered "disruptive" only if it is of an "extreme and aggravated nature." In Allen, the defendant, during trial, threatened to kill the judge, argued with the judge in an abusive and disrespectful manner, threatened to disrupt the proceedings by constantly talking, and answered the judge's questions with abusive and vile language. The judge repeatedly warned the defendant about his behavior and then expelled the defendant from the proceedings. Id. at 339-41, 90 S.Ct. at 1058-60. The United States Supreme Court concluded that Allen's actions were of such an "extreme and aggravated nature" as to justify the judge's remedial actions. Id. at 346, 90 S.Ct. at 1062.
Tanksley's actions at the prior extortion trial were not nearly as egregious as were those of the defendant in Allen, and the majority has failed to explain why Tanksley's actions were so "extreme and aggravated" that they warranted the district court's ruling stripping Tanksley of a constitutional right. Tanksley made numerous objections without legal basis, asked legally improper questions during direct examinations, requested to wear sunglasses in court, requested a delay to subpoena witnesses and examine documents, and testified on his own behalf at length in a rambling fashion. Additionally, the district judge did not give Tanksley the same warnings that the judge *154 issued in Allen. Finally, the district court took no remedial action in the extortion case and permitted Tanksley to represent himself throughout the case, thereby indicating that Tanksley's representation in the extortion case was not overly disruptive. Therefore, it is clear that Tanksley's actions were not of such an "extreme and aggravated nature" as to be considered "serious and obstructionist conduct" pursuant to Faretta and Allen. Rather, they were merely an "inherent inconvenience" caused by a pro se defendant. Lyons v. State, 106 Nev. 438, 444 n. 1, 796 P.2d 210, 217 n. 1 (1990). I conclude that the district court erred in denying Tanksley's motion for self-representation.
I also believe that the district court abused its discretion in adjudicating Tanksley a habitual criminal and sentencing him to a term of life imprisonment with the possibility of parole.
The version of NRS 207.010(2) effective at the time of Tanksley's conviction provided for an additional term of life imprisonment with or without the possibility of parole for a "habitual criminal," which was defined as a person "who has previously been three times convicted, whether in this state or elsewhere, of any crime which under the laws of the situs of the crime or of this state would amount to a felony." However, NRS 207.010(4), which was also in effect at the time of Tanksley's conviction and which has since been renumbered,[1] stated that "[t]he trial judge may, at his discretion, dismiss a count under this section which is included in any indictment or information." The purpose of this provision "is to permit dismissal `when the prior offenses are stale or trivial, or in other circumstances where an adjudication of habitual criminality would not serve the purposes of the statute or the interests of justice.'" Sessions v. State, 106 Nev. 186, 190, 789 P.2d 1242, 1244 (1990) (quoting French v. State, 98 Nev. 235, 237, 645 P.2d 440, 441 (1982)).
The habitual criminality statute "exists to enable the criminal justice system to deal determinedly with career criminals who pose a serious threat to public safety." Sessions, 106 Nev. at 191, 789 P.2d at 1245. It may be an abuse of discretion for the court to enter a habitual criminal adjudication when the convictions used to support the adjudication are nonviolent and remote in time. Id.
I conclude that sentencing Tanksley as a habitual offender was an abuse of discretion because his crimes do not prove that he was a career criminal who posed a serious threat to society and sentencing him as such does not serve the interests of justice. The court based its habitual criminal sentence on the fact that Tanksley previously had been convicted for criminal mischief, assault, and being an ex-felon in possession of a firearm. However, the assault, which was Tanksley's only violent crime, occurred eleven years prior to the arson, and no evidence was presented that he actually injured anybody. Additionally, the criminal mischief charge was for breaking a toilet and some glass and occurred sixteen years prior to the arson; this was a stale, trivial, non-violent crime. Finally, the ex-felon in possession of a firearm conviction occurred three years prior to the arson, and while it posed a potential for violence, it was not in itself a violent crime. I believe that at the very least, the district court should not have considered the criminal mischief charge and likely should not have considered the assault charge in assessing Tanksley eligibility for habitual criminal status.
Even if Tanksley is considered a career criminal, he does not appear to be a violent criminal who poses a "threat to public safety." Tanksley obviously suffers from serious mental illness and most likely belongs in a mental hospital, not prison; therefore, sentencing him as a habitual criminal does not serve the interests of justice and was an abuse of discretion.
SPRINGER, J., concurs.
NOTES
[1] We find it interesting to note that Tanksley has appealed the same district court judge's decision to grant Tanksley's request for self-representation in the extortion trial.
[2] This conviction resulted from Tanksley intentionally damaging and destroying plumbing fixtures and glass windows while incarcerated in a Texas jail.
[3] The record on appeal does not provide the facts surrounding the assault; however, the State's answering brief claims that Tanksley sharpened a toothbrush into a shiv and attacked someone with it. Tanksley alleges that he threatened a man with the shiv, but did not injure him.
[1] This section was renumbered as NRS 207.010(2).