# IN THE SUPREME COURT OF THE STATE OF NEVADA

RICKIE LEE HOLMES,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 69923

**FILED**

DEC 0 1 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## *ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of burglary and possession of burglary tools. Eighth Judicial District Court, Clark County; Michael Villani, Judge.

In 2014, George Hixon and his wife, Toni Hixon, were at their home in Las Vegas. The home is surrounded by a wall with a gate that is locked from the inside. At night, a stranger rang the doorbell to the gate. Toni answered and told the stranger to leave. Thereafter, she informed George of the incident. George exited the house through the garage, and he walked approximately one hundred feet from the house in an attempt to see the stranger. After he saw no one, George returned to the house and closed the garage door.

While inside the house, George heard the car alarm in his garage activate. When he entered his garage, he turned on the lights and saw appellant Rickie Holmes sitting in the front passenger seat of his vehicle. The doors to the vehicle were closed, and Holmes was lying over the console, his head towards the steering wheel, and smoking a cigarette.

17-41370

Ultimately, Holmes was arrested for burglary and possession of burglary tools, and the jury found him guilty on both charges. Based on his prior felony convictions, the district court adjudicated Holmes as a habitual criminal and sentenced him to serve a prison term of 60-150 months in the aggregate. This appeal followed.

*Sufficient evidence exists to support Holmes's conviction*

Holmes contends that there was insufficient evidence to support his conviction based on the lack of evidence demonstrating his intent to steal, or that the screwdriver was a burglary tool. The State contends that this argument lacks merit. We agree with the State.

Evidence is sufficient if "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Thompson v. State*, 125 Nev. 807, 816, 221 P.3d 708, 715 (2009) (internal quotation marks and emphasis omitted). The verdict of a jury will not be overturned when substantial evidence exists to support it. *Id.* Substantial evidence is defined as "evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Even circumstantial evidence alone can support a conviction. *Deveroux v. State*, 96 Nev. 388, 391, 610 P.2d 722, 724 (1980). Moreover, it is for the jury to determine the weight and credibility to give testimony. *Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981).

Pursuant to NRS 205.060(1), every person who, by day or night, enters any building or vehicle with the intent to commit larceny or any felony therein is guilty of burglary. Further, every person who unlawfully enters any house, room, building or vehicle may reasonably be inferred to have entered it with intent to commit larceny or a felony unless the

unlawful entry is explained by evidence satisfactory to the jury to have been made without criminal intent. NRS 205.065. Thus, the State need not prove that the defendant actually committed larceny or a felony inside the vehicle after he entered. A burglary was committed if the defendant entered the building or vehicle with the *intent* to commit larceny or a felony, regardless of whether the underlying crime was completed. *See State v. Patchen*, 36 Nev. 510, 516-17, 137 P. 406, 408 (1913).

Here, the State presented evidence at trial that Holmes entered George's garage and was found in his car. Further, the State presented evidence that Holmes possessed a flathead screwdriver, a tool commonly used in burglaries. A reasonable inference exists that Holmes's unlawful entry with a common burglary tool constitutes criminal intent. Defense counsel, during the cross-examination of George, asked what Toni said about the stranger being chased to imply that the stranger was Holmes and that Holmes entered the garage because he was being chased. However, the jury is not required to accept as true defense counsel's account of what happened. Instead, the jury is entitled to judge the credibility of all witnesses and make reasonable inferences based on the evidence presented in the case. The jury, acting reasonably and rationally, could have found the elements of the charged offenses. Therefore, substantial evidence exists to support Holmes's conviction.[1]

---

[1]We also reject Holmes's argument that cumulative error warrants reversal of his conviction because no errors occurred in this case. *See United States v. Sager*, 227 F.3d 1138, 1149 (9th Cir. 2000) (holding that cumulative error requires a showing of more than one error).

*The district court properly allowed the State to introduce the prior felony convictions for the purpose of impeachment*

Holmes argues that the district court erred in admitting his prior felony convictions as impeachment evidence when he did not testify at trial. In response, the State contends that the district court properly admitted Holmes's convictions to impeach the credibility of a hearsay statement Holmes introduced at trial.

"[T]he decision whether to admit a prior conviction for impeachment purposes rests within the sound discretion of the trial court, and will not be reversed absent a clear showing of abuse." *Pineda v. State*, 120 Nev. 204, 210, 88 P.3d 827, 832 (2004) (internal quotation marks omitted). NRS 51.069(1) provides that "[w]hen a hearsay statement has been admitted in evidence, the credibility of the declarant may be attacked or supported by any evidence which would be admissible for those purposes if the declarant had testified as a witness."

Here, during the direct examination of George, the State introduced certain statements from Toni. Defense counsel then cross-examined George, and George stated what Toni said about the stranger being chased. The State objected to George's cross-examination testimony and a bench conference ensued. The State argued that if the jury inferred that the stranger at the gate was Holmes, his statement to Toni that he was being chased was inadmissible hearsay. According to the State, Holmes introduced his own statement during the cross-examination of George to convince the jury that he was in fact being chased and therefore had no intent to commit a felony. Holmes acknowledged that he intended to argue he was being chased, supported by prior statements he made to the police, and planned to present this theory to the jury. Ultimately, the district court

overruled the State's objection to the hearsay statement and admitted two of Holmes's prior felony convictions for impeachment purposes.

Instead of testifying and subjecting himself to cross-examination, Holmes introduced his own hearsay statement. Further, although the statement was not elicited through his own witness on direct examination, Holmes was nonetheless the party that introduced the specific statement during cross-examination. Holmes also acknowledged that he intended to argue he was being chased and planned to present this theory to the jury. By introducing this statement, Holmes placed his credibility at issue. Pursuant to the plain language of NRS 51.069(1), Holmes's prior convictions were admissible for impeachment purposes. Thus, we conclude that the district court did not err.

*The jury instructions were proper because they are accurate statements of law*

Holmes argues that the district court erred in giving three jury instructions that misstated the law by containing improper presumptions. The State contends that this argument lacks merit because the jury instructions accurately reflected the law. We agree with the State. *See* NRS 205.065 (defining an inference of burglarious intent); NRS 205.080 (defining possession of instrument with burglarious intent); *Brinkman v. State*, 95 Nev. 220, 224, 592 P.2d 163, 165 (1979) (concluding a jury instruction that the specific intent in a burglary may be presumed from an unlawful entry was an accurate statement of the law); *Redeford v. State*, 93 Nev. 649, 654, 572 P.2d 219, 221 (1977) (stating that an inference of criminal intent logically flows from the fact of showing unlawful entry); *White v. State*, 83 Nev. 292, 295-96, 429 P.2d 55, 57 (1967) (explaining that the statutory

presumption embodied in NRS 205.065 is not unconstitutional for presuming an essential element of the crime of burglary).

*The State did not commit prosecutorial misconduct during closing argument*

Holmes claims that the State committed prosecutorial misconduct during closing argument by arguing that George had no reason to lie. In response, the State argues that a contextual view of its closing argument establishes that no prosecutorial misconduct occurred.

When deciding whether prosecutorial misconduct is prejudicial, "the relevant inquiry is whether a prosecutor's statements so infected the proceedings with unfairness as to result in a denial of due process." *Anderson v. State*, 121 Nev. 511, 516, 118 P.3d 184, 187 (2005). In making this inquiry, this court views the statements in context and will not overturn a conviction unless the appellant clearly demonstrates that the comments were "substantial and prejudicial." *Miller v. State*, 121 Nev. 92, 99, 110 P.3d 53, 58 (2005) (internal quotation marks omitted). This court has explained that whether prosecutorial misconduct merits reversal depends on the strength of the evidence of guilt or innocence. *Rowland v. State*, 118 Nev. 31, 38, 39 P.3d 114, 118 (2002).

A prosecutorial statement constitutes impermissible vouching if it places the government's prestige "behind [a] witness by providing personal assurances of [the] witness's veracity." *United States v. Weatherspoon*, 410 F.3d 1142, 1147 (9th Cir. 2005) (internal quotation marks omitted). A prosecutor can argue reasonable inferences concerning a witness's credibility; however, the prosecutor may not infer that his opinion is based on facts that the prosecutor knows and the jury does not. *Id.* Further, "when a case involves numerous material witnesses and the outcome depends on which witnesses are telling the truth, reasonable

latitude should be given to the prosecutor to argue the credibility of the witness—even if this means occasionally stating in argument that a witness is lying." *Rowland*, 118 Nev. at 39, 39 P.3d at 119.

Here, during the State's closing argument, the prosecutor discussed the jury's responsibility to weigh the credibility of each witness, and that George lacked any motive to lie. While Holmes argues that the State expressed a personal opinion about the case, the State limited its comments to arguing credibility, within the context of the relevant jury instruction. As a result, none of the statements amounted to improper vouching of the witness. Thus, the State committed no prosecutorial misconduct because the statements were within its right to argue credibility to the jury.

*The district court did not err in granting the State's challenge for cause during voir dire*

Holmes claims that the district court abused its discretion in granting the State's challenge for cause to dismiss Prospective Juror No. 232. In response, the State argues that the district court properly granted its challenge based upon the prospective juror's statements made during voir dire.

The district court has broad discretion in ruling on challenges for cause. *Weber v. State*, 121 Nev. 554, 580, 119 P.3d 107, 125 (2005). When determining if a juror should have been removed for cause, this court evaluates "whether a prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Id.* (internal quotation marks omitted). Pursuant to NRS 16.050(1), challenges for cause may be taken on various grounds, including "[h]aving formed or expressed an unqualified opinion or

 

belief as to the merits of the action, or the main question involved therein" and "[t]he existence of a state of mind in the juror evincing enmity against or bias to either party." NRS 16.050(1)(f), (g).

Here, Prospective Juror No. 232 indicated that if the only evidence presented was eyewitness testimony, this alone would create a reasonable doubt for him. This remark caused the State to presume that Prospective Juror No. 232's views would prevent or substantially impair his performance as a juror. Because the State was concerned about his ability to follow the law and perform his duties as a juror, it was proper to remove him. Further, Holmes only asked Prospective Juror No. 232 two questions pertaining to this remark and did not sufficiently establish that Prospective Juror No. 232 would not automatically find reasonable doubt in a case that solely involved eye witness testimony. Thus, the district court did not err in granting the State's challenge for cause.

*The district court did not err during sentencing*

Holmes claims that the district court erred when it continued his sentencing, giving the State approximately twenty-five days to acquire documentation of three additional judgments of conviction for purposes of a habitual criminal adjudication. Further, Holmes argues that the district court erred in sentencing him as a habitual criminal. The State contends that the continuance caused no prejudice to Holmes and that the district court properly adjudicated him as a habitual criminal. We now consider Holmes's arguments below.

"This court reviews the district court's decision regarding a motion for continuance for an abuse of discretion." *Rose v. State*, 123 Nev. 194, 206, 163 P.3d 408, 416 (2007). Likewise, this court reviews a district court's determination of habitual criminality for an abuse of discretion.

 

*Sessions v. State*, 106 Nev. 186, 190, 789 P.2d 1242, 1244 (1990). "Adjudication of a defendant as a habitual criminal is subject to the broadest kind of judicial discretion." *LaChance v. State*, 130 Nev. 263, 276-77, 321 P.3d 919, 929 (2014) (internal quotation marks and emphasis omitted).

### Continuance of sentencing

Each case turns on its own particular facts, and much weight is given to the reasons offered to the district court at the time the request for a continuance is made. *Zessman v. State*, 94 Nev. 28, 31, 573 P.2d 1174, 1177 (1978). Here, the delay in sentencing was not purposeful or oppressive. The State presented two of Holmes's prior judgments of conviction at trial. After trial, the State requested time to present three additional judgments of conviction at sentencing. Because these judgments were archived, they were not available at the first sentencing date, and thus, the State requested a continuance to acquire all of the necessary documents. Holmes asserts that if the sentencing had proceeded as planned, the district court could not have adjudicated him as a habitual criminal because the State was not prepared to submit the relevant judgments of conviction. But the State had already presented two judgment of convictions at trial for prior crime that would qualify Holmes for adjudication as a habitual criminal, *see* NRS 207.010(1)(a), and therefore Holmes failed to demonstrate how the continuance of his sentencing prejudiced him. Therefore, the district court did not err in continuing the sentencing.

### Adjudication as a habitual criminal

Pursuant to NRS 207.010, a defendant who has been convicted of at least three felonies qualifies as a habitual criminal, and the purpose of

 

this statute is to allow the criminal justice system to deal determinedly with career criminals who seriously threaten public safety. *Sessions*, 106 Nev. at 191, 789 P.2d at 1245. Through the habitual criminal statute, the Nevada Legislature also wanted to discourage repeat offenders and offer them a chance to reform. *Rezin v. State*, 95 Nev. 461, 463, 596 P.2d 226, 227 (1979). NRS 207.010 permits a district court to dismiss a habitual criminal allegation "when the prior offenses are stale or trivial, or in other circumstances where an adjudication of habitual criminality would not serve the purposes of the statute or the interests of justice." *French v. State*, 98 Nev. 235, 237, 645 P.2d 440, 441 (1982). This court has noted that NRS 207.010 does not expressly limit the judge's discretion. *Tanksley v. State*, 113 Nev. 997, 1004, 946 P.2d 148, 152 (1997). Further, NRS 207.010 does not make any special allowances for non-violent crimes or for the remoteness of convictions; rather, these are considerations within the district court's discretion. *Arajakis v. State*, 108 Nev. 976, 983, 843 P.2d 800, 805 (1992).

Here, the district court did not abuse its discretion in adjudicating Holmes as a habitual criminal because his prior convictions are not too stale or trivial. The State filed five felony judgments of conviction ranging from 1991 to 2005 in relation to the subject case: (1) Burglary (Case No. C98119) (1991), (2) Burglary (Case No. C166840) (2001), (3) Attempt Burglary (Case No. C175583) (2001), (4) Attempt Robbery (Case No. C175583) (2001), and (5) Assault with a Deadly Weapon (Case No. C210901) (2005). Holmes's convictions are not to stale or trivial because they span over a 14-year period and most of them involved burglary or violent crimes. The district court considered Holmes's arguments and ultimately rejected them, determining that habitual criminal adjudication

 

was just and proper. Holmes's criminal history demonstrates recidivism and supports his adjudication as a habitual criminal. Therefore, the district court did not abuse its discretion.

Based on the foregoing, we ORDER the judgment of the district court AFFIRMED.

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

cc:     Hon. Michael Villani, District Judge
        Clark County Public Defender
        Attorney General/Carson City
        Clark County District Attorney
        Eighth District Court Clerk