JOHN BENJAMIN ODOMS, APPELLANT, *v.* THE STATE OF NEVADA, RESPONDENT.

No. 15626

February 20, 1986                                    714 P.2d 568

[Rehearing denied April 24, 1986]

*Terry, Winter & Wessel,* Carson City, for Appellant.

*Brian McKay,* Attorney General, Carson City; *Robert Miller,* District Attorney, Clark County, for Respondent.

## OPINION

*Per Curiam:*

A jury found appellant John Odoms guilty of attempted murder with use of a deadly weapon and burglary. The district court adjudged Odoms an habitual criminal. The district court sentenced Odoms to three consecutive life terms without the possibility of parole: one for the burglary conviction, a second for the attempted murder conviction, and a third as an enhancement for Odoms' use of a deadly weapon in the commission of the attempted murder. We conclude that the district court erred when, pursuant to NRS 193.165, it sentenced Odoms to a sepa-

rate life sentence for Odoms' use of a deadly weapon. We therefore vacate that life sentence. Otherwise, we affirm the judgment of the remaining convictions.

## THE FACTS

On November 20, 1981, at approximately 7:40 a.m., Robert Koenigsfeld, the owner of Bob's Auto Repair in Las Vegas, arrived at his garage. Douglas Doescher, one of Koenigsfeld's employees, arrived with Koenigsfeld. Upon their arrival, both men noticed Odoms. Koenigsfeld was in the garage when Odoms entered. Koenigsfeld said, "Good morning sir. Can I help you?" Odoms replied, "How are you doing, man?" and then shot Koenigsfeld twice. Koenigsfeld fell to the floor wounded.[1] Odoms left the shop.

Harold James, the owner of the nearby Charleston Garage, heard the two gunshots and he saw Odoms run from Bob's Auto Repair. James saw a pistol fall from Odoms' coat pocket. He watched Odoms pick up the pistol, run down the alley, and jump into a red pickup truck driven by another man. James telephoned this information to the police.

The police traced the license plate number and found that the pickup truck was registered to a Roland Brown, a bartender at Toots Bar. When the police arrived at Toots Bar to question Brown, Odoms was in the bar. As the police started questioning Brown, Odoms ran out carrying a brown paper bag.

The police traced Odoms to the Beverly Palms Apartments where he had been staying with Claudette Slaughter. The next morning, Odoms returned to the apartment and told Slaughter to go and get a gun hidden in a brown paper bag behind an A&W Root Beer stand. Odoms told her it was the only evidence against him. Slaughter did not get the gun.

On November 20, 1981, Miriam Broughton, the manager of the Studio Plaza Apartments, asked her husband to check room 281 to verify that the former tenant had removed her belongings. Willard Broughton checked room 281 and discovered a man sleeping in the room. He called the police. Officer DuPont responded to the call. Willard Broughton and DuPont went to room 281 and discovered that the man sleeping in the room was Odoms. DuPont arrested Odoms. At the time of his arrest, Odoms was wearing a shoulder holster containing a chrome-plated gun.

The police conducted separate photographic lineups for Koenigsfeld and Harold James. Koenigsfeld and Harold James

---

[1]Koenigsfeld suffered an extensive gunshot wound to the chest that destroyed most of his liver and a gunshot wound to the hip.

independently selected Odoms' picture from the photographic lineup. At trial, Koenigsfeld and Harold James again identified Odoms.

Following trial, the jury found Odoms guilty of attempted murder with the use of a deadly weapon and burglary. The district court adjudged Odoms an habitual criminal. The district court then sentenced Odoms under NRS 207.010 and NRS 193.165 to three consecutive life sentences without possibility of parole. Odoms appeals from the judgment of conviction and challenges his sentence.

## THE MOTION TO SUPPRESS

Odoms contends that the district court erred by denying his motion to suppress the gun and shoulder holster that he was wearing at the time of his arrest at the Studio Plaza Apartments. Odoms claims that he was sleeping in room 281 with the occupant's permission; that therefore the seizure of his pistol and holster violated his reasonable expectation of privacy. He suggests that this evidence was inadmissible as the fruits of an illegal search and seizure. We must disagree.

Before Odoms may raise a Fourth Amendment challenge to the search and seizure of his pistol and holster, he must demonstrate a violation of a legitimate expectation of privacy. Hicks v. State, 96 Nev. 82, 605 P.2d 219 (1980); Rakas v. Illinois, 439 U.S. 128 (1978). A person wrongfully on the premises has no legitimate expectation of privacy of the premises. See Rakas at p. 142.

Janet Johnson had been the registered guest of room 281 of the Studio Plaza Apartments where Odoms was discovered and arrested and the evidence seized. Johnson's tenancy had expired at noon, November 20, 1981. Miriam Broughton testified that on November 21, 1981, Johnson informed her that Odoms had not been her guest and that she had left the door to room 281 unlocked when she had left.

Odoms did not have a legitimate expectation of privacy in the premises. Hicks, supra. See also, Obermeyer v. State, 97 Nev. 158, 625 P.2d 95 (1981). Therefore, Odoms lacks standing to challenge the search and seizure.

## THE IDENTIFICATION OF ODOMS

The district court admitted evidence of the photographic lineups and the identification of Odoms by Koenigsfeld and Harold James. Odoms now contends that his conviction must be set aside because the photographic lineups were so impermissibly suggestive as to give rise to a substantial likelihood of misidentification and deprive him of his right to a fair trial.

The applicable due process standard regarding photographic lineups as enunciated in Simmons v. United States, 390 U.S. 377, 384 (1968) is: "[C]onvictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Coats v. State, 98 Nev. 179, 643 P.2d 1225 (1982).

Our review of the record reveals that the six photographs used in the lineup matched the general description of the assailant which was provided by the witnesses, and that the lineup itself was not impermissibly suggestive. *See* Lamb v. State, 96 Nev. 452, 611 P.2d 206 (1980). We note that the witnesses independently reviewed the six photographs; that the officer conducting the lineup did nothing to suggest to either Koenigsfeld or James which photograph to select or which photograph was Odoms. We conclude that the photographic lineup and the identification procedure were not impermissibly suggestive. French v. State, 95 Nev. 586, 600 P.2d 218 (1979).

At trial, Koenigsfeld and Harold James identified Odoms based on their eyewitness observations at the time of the shooting. Both men had a sufficient time to see and observe Odoms. Both had a clear and unobstructed view of Odoms. Defense counsel cross-examined the witnesses at trial. The witnesses' identifications of Odoms were properly admitted. *French* at p. 590. Odoms' due process rights were not violated. *Coats* at p. 181.

## THE RIGHT TO COUNSEL

Odoms claims that he was denied his right to counsel during the photographic displays as guaranteed by the Sixth Amendment of the United States Constitution. We disagree.

The Sixth Amendment does not grant the right to counsel at photographic displays conducted by the government for the purpose of allowing a witness to attempt an identification of the offender. United States v. Ash, 413 U.S. 300 (1973); *see also,* Lamb v. State, 96 Nev. 452, 611 P.2d 206 (1980); and French v. State, 95 Nev. 586, 600 P.2d 218 (1979). Odoms' contention is meritless.

## THE MULTIPLE SENTENCE ENHANCEMENTS

After the jury found Odoms guilty of burglary and attempted murder with the use of a deadly weapon, Odoms was adjudged an

habitual criminal pursuant to NRS 207.010.[2] Pursuant to NRS 207.010(2) the district court imposed the enhanced penalty of a life sentence without possibility of parole for each of the primary offenses with the two sentences to run consecutively. Pursuant to NRS 193.165[3] the district court imposed an enhancement of a third life sentence without possibility of parole for Odoms' use of a deadly weapon in the commission of the attempted murder.

On appeal Odoms challenges the three multiple sentence enhancements. Odoms argues that the maximum penalty he could have received under both NRS 207.010 and NRS 193.165 was one life sentence without possibility of parole. Odoms contends that the district court erred by imposing three multiple consecutive life sentences because the convictions arose out of the same act, transaction or occurrence and under NRS 207.010 must therefore be treated as one conviction for sentence enhancement purposes.

The purpose behind habitual criminal statutes is to increase sanctions for the recidivist. Lisby v. State, 82 Nev. 183, 414 P.2d 592 (1966). By enacting the habitual criminal statute, the legislature sought to discourage repeat offenders. Rezin v. State, 95

---

[2]NRS 207.010 provides, in pertinent part, as follows:

. . . .

2. Every person convicted in this state of any crime of which fraud or intent to defraud is an element, or of petit larceny, or of any felony, who has previously been three times convicted, whether in this state or elsewhere, of any crime which under the laws of the situs of the crime or of this state would amount to a felony, or who has previously been five times convicted, whether in this state or elsewhere, of petit larceny, or of any misdemeanor or gross misdemeanor of which fraud or intent to defraud is an element, shall be punished by imprisonment in the state prison for life with or without possibility of parole. If the penalty fixed by the court is life imprisonment with the possibility of parole, eligibility for parole begins when a minimum of 10 years has been served.

3. Conviction under this section operates only to increase, not to reduce, the sentence otherwise provided by law for the principal crime.

4. It is within the discretion of the district attorney whether or not to include a count under this section in any information, and the trial judge may, at his discretion, dismiss a count under this section which is included in any indictment or information.

[3]NRS 193.165 provides, in pertinent part, as follows:

1. Any person who uses a firearm or other deadly weapon or a weapon containing or capable of emitting tear gas, whether or not its possession is permitted by NRS 202.375, in the commission of a crime shall be punished by imprisonment in the state prison for a term equal to and in addition to the term of imprisonment prescribed by statute for such crime. The sentence prescribed by this section shall run consecutively with the sentence prescribed by statute for such crime.

2. This section does not create any separate offense but provides an additional penalty for the primary offense, whose imposition is contingent upon the finding of the prescribed fact.

Nev. 461, 596 P.2d 226 (1979). The statute allows an enlarged punishment for one who cannot be rehabilitated, and, who as a recidivist, repeatedly violates the law. Howard v. State, 83 Nev. 53, 422 P.2d 548 (1967). As we opined in *Howard*, "society has the right to remove from its ranks for a longer time those who refuse to conform to a lawful mode of living." *Id.*

Odoms was convicted of two distinct primary offenses: (1) attempted murder with the use of a deadly weapon and (2) burglary. Enhancement of the penalty for each primary offense is applicable to each felony conviction. *See* Schuler v. State, 668 P.2d 1333 (Wyo. 1983); Wingo v. Ringo, 408 S.W.2d 469 (Ky. 1966), *cert. denied,* 386 U.S. 946 (1967); *cf.* Crew v. State, 100 Nev. 38, 675 P.2d 986 (1984) (enhancement of penalty of each count pursuant to enhancement statute NRS 193.165 is proper when each count requires proof of an additional fact which the other does not); Koza v. State, 100 Nev. 245, 680 P.2d 44 (1984) (consecutive enhanced penalties proper where separate and distinct statutes and offenses are involved). We conclude that under NRS 207.010 the district court properly enhanced Odoms' sentence under the habitual criminal statute for the two primary offenses.

After the district court enhanced the sentences for the burglary and attempted murder convictions pursuant to NRS 207.010, the judge then imposed an additional enhanced sentence under NRS 193.165(1) for Odoms' use of a deadly weapon in the commission of the attempted murder. We conclude that the district court erred by doing so.

NRS 193.165 "demonstrates generally the legislature's concern regarding the increased use of deadly weapons in the commission of crimes and its belief that such proscription will serve to deter persons from using weapons during the perpetration of certain crimes." Anderson v. State, 95 Nev. 625, 600 P.2d 241 (1979). The use of a deadly weapon in the commission of a crime does not constitute a separate substantive offense under NRS 193.165 and does not subject a defendant to a separate penalty; instead, NRS 193.165 serves only to enhance the penalty imposed for the primary offense. NRS 193.165(2); Biffath v. Warden, 95 Nev. 260, 593 P.2d 51 (1979); Woofter v. O'Donnell, 91 Nev. 756, 542 P.2d 1396 (1975). In Carter v. State, 98 Nev. 331, 647 P.2d 374 (1982), we considered the sentencing of a defendant under the enhancement statutes NRS 193.165 and NRS 193.167. *Carter* at p. 331. The district court imposed consecutive sentences for multiple enhancements under those statutes. *Id.* We found the legislative intent ambiguous as to whether a single substantive offense was subject to more than one consecutive

enhancement penalty. *Id.* We held that the sentencing court may not impose consecutive enhancement penalties under NRS 193.165 and NRS 193.167. *Carter* at p. 335.

We conclude in the instant case that as the habitual criminal statute does not constitute a substantive offense, a sentence imposed pursuant to that statute cannot be further enhanced pursuant to NRS 193.165. We hold that when a defendant is convicted of a principal crime with the use of a deadly weapon and is adjudged an habitual criminal, the sentencing court may either enhance the sentence for the primary offense pursuant to NRS 193.165 for the use of a deadly weapon, or, alternatively, the court may enhance the sentence under the habitual criminal statute.

A district court may not enhance a primary offense under both NRS 193.165 and NRS 207.010. In the present case the district court chose to sentence Odoms pursuant to the habitual criminal statute. The court therefore was not then permitted to also sentence Odoms pursuant to NRS 193.165. We therefore vacate the life sentence without possibility of parole imposed pursuant to NRS 193.165.

We have considered Odoms' remaining contentions and conclude that they are meritless. Accordingly, we affirm Odoms' convictions. We also affirm the two consecutive life sentences without possibility of parole imposed pursuant to NRS 207.010, but we vacate the life sentence without possibility of parole imposed pursuant to NRS 193.165.