**UNITED STATES of America, Plaintiff–Appellee,**

v.

**William A. DODDS, Defendant–Appellant.**

**No. 90–3348.**

United States Court of Appeals, Tenth Circuit.

Oct. 7, 1991.

Michael L. Harris, Asst. Federal Public Defender (Charles D. Anderson, Public Defender, with him, on the brief), Kansas City, Kan., for appellant.

Christina L. Morris, Asst. U.S. Atty. (Lee Thompson, U.S. Atty., and Leon J. Patton, Asst. U.S. Atty., with her, on the brief), Kansas City, Kan., for appellee.

Before ANDERSON and TACHA, Circuit Judges, and CHRISTENSEN, Senior District Judge.*

CHRISTENSEN, Senior District Judge.

Defendant-appellant William A. Dodds, having been charged by indictment with the robbery of a federally-insured bank in violation of 18 U.S.C. § 2113(a), (d), moved for the suppression of evidence claimed to have been obtained contrary to his Fourth Amendment rights. His motion to suppress was denied by the district court. With its approval and the consent of the government, defendant entered a conditional plea of guilty pursuant to Fed.R.Cr.P.

---

* A. Sherman Christensen, Senior Judge, United States District Court for the District of Utah, sitting by designation.

11(a)(2), thus reserving for appeal following his plea and prison sentence the two issues now before us: (1) whether the defendant lacks standing to challenge entry by police into the apartment where he was arrested and the evidence in question seized; (2) whether that entry was without probable cause in violation of defendant's Fourth Amendment rights. Being of the opinion that the first question must be answered in the affirmative and the second in the negative, we affirm.

Reviewing the factual findings of the district court under the clearly erroneous rule, and the legal issues of standing and probable cause *de novo, United States v. Rubio-Rivera,* 917 F.2d 1271, 1275 (10th Cir.1990); *U.S. v. Butler,* 904 F.2d 1482, 1484 (10th Cir.1990), we accept the following facts as essentially undisputed and in accordance with the findings of the district court.[1]

On October 31, 1989, there was an attempt to rob the Twin City State Bank in Kansas City, Kansas. The perpetrator was armed with a hand grenade. The next day an individual displayed a similar hand grenade at a convenience store in Kansas City. Approximately four minutes after receiving a report of this holdup in progress, a Kansas City police officer, Kyle O'Brien, arrived in the vicinity of the store. He had received a description of the robber as being a young, black male, medium build, five eight to five ten, wearing a red or maroon hooded sweatshirt. Officer O'Brien was aware of an attempted robbery at Twin City State Bank and a robbery at a Kansas City, Kansas, Baskin–Robbins store within the preceding few days, in which the robber used a hand grenade and otherwise matched the description of the robber at the convenience store.

Officer O'Brien immediately proceeded to look for the suspect in a public housing area to the south of the convenience store because, by reason of the terrain and constructions in the vicinity and his knowledge of other robberies, he knew that suspects in that area usually fled to the south.

The officer saw the suspect walking in the public housing project about two blocks south of the store. Dodds matched the description the officer had just received in that he was a black male, appeared to be in the range of five eight to five ten in height, of medium build, and was wearing a hooded maroon sweatshirt with the hood over his head. When the suspect saw the police car he began to run toward one of the apartment buildings. The officer drove to the apartment building where he believed the suspect had gone, losing sight of him for a moment but stopping his car on the opposite side where he thought the suspect would pass if he had not gone into one of the apartments in the building.

There were eight apartments in that building. Officer O'Brien noted that one of the apartments on the lower level was boarded up but that the door was ajar. After a minute or a minute and a half during which the officer waited for the arrival of backup officers, the door to the apparently vacated apartment was pushed open and Dodds was found sitting on the floor of an otherwise empty bedroom with a grenade by his side. The defendant's arrest followed, and while the arresting officer was filling out his report the defendant gave his address at a place across town from where the arrest was made.

In ruling on the motion to suppress, the district court found "that this place where the defendant was found was in no way his residence and that the most, that he was a trespasser and there's just no indication other than his own self-serving statements that he had some kind of purported expectation of privacy." The court added:

> But disregarding that question [as to the right of privacy] altogether, I think the most, the strongest argument in upholding the seizure of the grenade and certainly upholding the validity of the

---

1. In some respects the testimony of the defendant varied from that of the arresting officer with respect to the extent of the former's use of the vacant apartment where he was arrested and whether he ran to the apartment because he noticed the police vehicle or was merely "jogging" without being conscious of it. But the trial court noted its acceptance of the testimony of the police officer notwithstanding, and the record clearly supports the officer's version.

defendant's arrest and search as an incident to that arrest, [is that] all of these circumstances as well as the others give rise to a true case of hot pursuit and exigent circumstances that would warrant an arrest without a warrant, and [I] also uphold the validity of any search as an incident to that arrest.

The facts in the present case at once tend to establish lack of any reasonable expectation of privacy in the apartment on the part of defendant, the absence of any such right to which society could find reasonable, and the exigency of a situation fully justifying the warrantless search, seizure and arrest.

In his brief, Mr. Dodds suggested an expectation of privacy because he had used the vacant apartment as a sleeping place before, that if he held it long enough under claim of right (which he had not theretofore made) he might have acquired title by prescription, that his entry did not constitute the crime of "trespass" as defined by the Kansas criminal law, and that he had found the door of the apartment unlocked.

The governing rules are well stated in *United States v. Rubio–Rivera,* 917 F.2d at 1274:

> Given the personal nature of interest protected, standing is a matter of substantive fourth amendment law. *Rakas v. Illinois,* 439 U.S. 128, 139–40, 99 S.Ct. 421, 428, 58 L.Ed.2d 387 (1978). A defendant may not challenge an allegedly unlawful search or seizure unless he demonstrates that his own constitutional rights have been violated. *United States v. Boruff,* 909 F.2d 111, 115 (5th Cir.1990). Standing is not conferred vicariously; even if the fourth amendment rights of a third party have been violated, a district court may not suppress evidence unless the defendant has met his burden of proving that the challenged search or seizure infringed on his personal fourth amendment interests. *United States v. Erwin,* 875 F.2d 268, 270 (10th Cir.1989). Standing is analyzed based upon two factors: "whether the individual, by his conduct has 'exhibited an actual (subjective) expectation of privacy,'"

and "whether the individual's subjective expectation of privacy is 'one that society is prepared to recognize as "reasonable."'" *Smith v. Maryland,* 442 U.S. 735, 740, 99 S.Ct. 2577, 2580, 61 L.Ed.2d 220 (1979) (quoting *Katz v. United States,* 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967) (Harlan, J., concurring)); *United States v. Arango,* 912 F.2d 441, 445 (10th Cir.1990); *Erwin,* 875 F.2d at 270.

Applying these principles, *United States v. Ruckman,* 806 F.2d 1471 (10th Cir.1986), both in its majority opinion and the dissent, is confirmatory of lack of standing in the present case. In *Ruckman,* the "home" claimed by the defendant to have been unreasonably searched by the authorities was a natural cave located in a remote area of southern Utah on land owned by the United States and controlled by the Bureau of Land Management. Ruckman had lived in and around the cave during some eight months prior to the events which formed the basis of the case and had attempted to enclose it by fashioning a crude entrance wall from boards and other materials which surrounded a so-called door. In the absence of Ruckman, authorities searched the cave and found firearms which furnished the basis of his arrest, after which antipersonnel boobytraps were discovered for which he was prosecuted.

This Court on appeal assumed that Ruckman entertained a subjective expectation of privacy, *"ie.,* absent a search warrant or probable cause or exigent circumstances," none of which was contended for by the government, but held that "[t]he real issue is whether such subjective expectation is reasonable under the circumstances of the case." It observed that "[t]he test of legitimacy is not whether the individual chooses to conceal assertedly 'private' activity but whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment." The judgment refusing to suppress the evidence was affirmed.

Judge McKay in his dissenting opinion considered any failure of the cave to qualify as a "house" and the fact of technical

trespass were not controlling and identified the critical inquiry as whether Mr. Ruckman had a legitimate expectation of privacy in the cave, "so that he should be free, not from *all* searches but from *unreasonable* searches—those undertaken without a warrant, as in this case, and without justification to forego a warrant." (Emphases in original.) Far less than in the circumstances of *Ruckman,* Dodd's expectation of privacy in an apartment in which he had no interest and hardly more than a fugitive presence would not be one that could be accepted by society; even Judge McKay's justification of Ruckman's situation with respect to reasonable expectation could not be extended to Dodd's by any stretch of reason. A recent ruling of the Supreme Court upholding the reasonable expectation of privacy on the part of an overnight guest of a duplex owner is not inconsistent with this view and in principle supports the ruling of the district court. *See Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 1688–89, 109 L.Ed.2d 85 (1990).

■ · To the extent that the expectancy of privacy issue in light of *Ruckman,* 806 F.2d at 1472, may be related to the hot pursuit and exigent circumstance issue, commending a unitary approach, we note that the trial court's finding of probable cause is fully supported by the record. *Cf. U.S. v. Smith,* 797 F.2d 836, 841 (10th Cir.1986). The situation was fraught with exigency, not only with respect to the hot pursuit of the suspect and the apprehended presence of a lethal grenade, but the necessity of promptly ascertaining whether assuredly the suspect with his weapon was within the apartment or had fled elsewhere to require prompt search of other apartments.

Cases closely analogous to the one before us have been difficult to find. Perhaps this is because of defense counsel's extraordinary creativity in contending here that refuge of a fleeing felon in a vacant apartment in which he had no interest, leaving the door ajar, could supply a sanctuary from pursuit, search, seizure and arrest upon probable cause under exigent circumstances.

But *Odoms v. State,* 102 Nev. 27, 714 P.2d 568 (1986), provides close parallels. Faced with a charge of attempted murder with the use of a deadly weapon and burglary, the defendant contended on appeal that the district court erred in denying his motion to suppress the gun and shoulder holster he was wearing at the time of his arrest at the Studio Plaza Apartments to which he had fled and in which he was sleeping. Another person had been the registered guest of the room in which Odom was found, but her tenancy had theretofore expired and she had left the door unlocked when she departed. The Supreme Court of Nevada held, as had the Nevada trial court, that the defendant who had entered the apartment through the unlocked door lacked standing to challenge the search and seizure.

The judgment of the district court is AFFIRMED.