*999 OPINION
By the Court,
Young, J.:
While awaiting trial on charges of extortion and obtaining money under false pretenses (“the extortion case”), appellant Richard Tanksley (“Tanksley”) was incarcerated in the Carson City jail. On October 30, 1993, the jail deputies attempted to give Tanksley his dinner meal. According to the deputies, Tanksley refused to take his meal and, when instructed, refused to return to his cell. Tanksley was then physically restrained and placed in a solitary lockdown cell. Shortly thereafter, a deputy saw smoke coming from Tanksley’s lockdown cell. While the remainder of the inmates in the cell block were being evacuated, a deputy saw Tanksley in his cell, lying on his stomach and yelling “Fire!” Tanksley was removed from his cell, and the deputies identified the source of the smoke as Tanksley’s mattress, which had been cut open, the stuffing pulled out, and set afire. Tanksley was subsequently charged with one count of arson.
Attorney Sharon Claassen (“Claassen”), Tanksley’s court-appointed attorney in the extortion case, was also appointed as Tanksley’s counsel in the instant case. Claassen was permitted to withdraw from both cases based on the fact that Tanksley refused to communicate or cooperate with her. The trial court then appointed attorney Erik Johnson (“Johnson”) as Tanksley’s attorney for both cases. Johnson was permitted to withdraw from the arson case based on a conflict of interest. The trial court then appointed attorney Nathan Young (“Young”) as Tanksley’s counsel in the arson case.
*1000 Tanksley’s extortion case went to trial on February 21, 1995. Johnson, who at that time was still Tanksley’s counsel, informed the court that Tanksley did not want assistance of counsel. After canvassing Tanksley, the district court granted Tanksley’s motion to waive representation by counsel and allowed Tanksley to represent himself at trial.
In the instant case, Young filed a motion on March 3, 1995, twelve days prior to the commencement of the arson trial, seeking to withdraw as counsel on the grounds that Tanksley would not communicate or cooperate with him and that Tanksley wished to represent himself. The district judge denied the motion, stating:
This Court in the prior trial which was last month observed the Defendant’s conduct in representing himself and to say the least it was pathetic and it was disruptive.
Furthermore, the district court concluded that Tanksley had been given ample opportunity to retain private counsel and failed to do so, that the court had appointed counsel for Tanksley three times (Claassen, Johnson, and Young), and that Tanksley had refused to cooperate with both Claassen and Young (Johnson withdrew based on a conflict of interest).
At the conclusion of the trial, Tanksley was found guilty of first degree arson. The judge adjudicated him a habitual criminal pursuant to NRS 207.010 and sentenced him to life in prison with the possibility of parole. Tanksley now appeals his conviction and sentence. We conclude that Tanksley’s arguments have no merit and affirm the judgment below.

Right to self-representation

Tanksley contends that his right to self-representation was violated when the district court denied his request to act as his own attorney at his arson trial.[1]
A criminal defendant has an “unqualified right” to represent himself at trial so long as his waiver of counsel is intelligent and voluntary. Baker v. State, 97 Nev. 634, 636, 637 P.2d 1217, 1218 (1981) (citing Faretta v. California, 422 U.S. 806 (1975)), overruled on other grounds by Lyons v. State, 106 Nev. 438, 796 P.2d 210 (1990). In assessing a waiver, the question before the district *1001 court is not whether the defendant can competently represent himself, but whether he can knowingly and voluntarily waive his right to counsel. “[T]he defendant’s technical knowledge is not the relevant inquiry. In order for a defendant’s waiver of right to counsel to withstand constitutional scrutiny, the judge need only be convinced that the defendant made his decision with a clear comprehension of the attendant risks.” Graves v. State, 112 Nev. 118, 124, 912 P.2d 234, 238 (1996) (citing Faretta, 422 U.S. at 835-36). Furthermore, “a request for self-representation may not be denied solely because the court considers the defendant to lack reasonable legal skills or because of the inherent inconvenience often caused by pro se litigants.” Lyons, 106 Nev. at 444 n. 1, 796 P.2d at 217 n.1.
However, a defendant may be denied his right to self-representation where his request is untimely, the request is equivocal, the request is made solely for the purpose of delay, the defendant abuses his right by disrupting the judicial process, or the defendant is incompetent to waive his right to counsel. Lyons, 106 Nev. at 443-44, 796 P.2d at 213.
Here, the district court denied Tanksley his request to represent himself because he was disruptive. A defendant may be denied his right of self-representation if he or she is unable or unwilling to abide by rules of courtroom procedure. Savage v. Estelle, 924 F.2d 1459, 1464 (9th Cir. 1990); see also McKastle v. Wiggins, 465 U.S. 168, 173 (1984). A defendant’s “right to self-representation does not allow him to engage in uncontrollable and disruptive behavior in the courtroom.” United States v. Flewitt, 874 F.2d 669, 674 (9th Cir. 1989). Trial judges have the obligation to control courtroom proceedings. Howard v. State, 106 Nev. 713, 724, 800 P.2d 175, 181 (1990) (Steffen, J., dissenting). In determining disruption, the defendant’s pretrial activity is relevant “if it affords a strong indication that the defendants will disrupt the proceedings in the courtroom.” Flewitt, 874 F.2d at 674.
In the present case, the lower court judge had the opportunity to observe Tanksley’s demeanor and conduct throughout these proceedings and was in the best position to determine if Tanksley was disruptive. While “[t]he cold record is a poor substitute for demeanor observation,” Graves, 112 Nev. at 124, 912 P.2d at 238, we conclude that the record supports the district court’s determination. For example, at a September 27, 1994 status hearing, Tanksley talked back to the judge and behaved so disre *1002 spectfully and contemptuously that the judge found him in contempt and was forced to tape Tanksley’s mouth shut for the remainder of the hearing. The judge further warned Tanksley that if he behaved the same way at another appearance, the judge would tape his mouth shut again. This court will not substitute its evaluation for that of the district court judge’s own personal observations and impressions. Kobinski v. State, 103 Nev. 293, 296, 738 P.2d 895, 896 (1987). Therefore, if the district court decided that Tanksley’s pretrial activity was a strong indication that Tanksley’s self-representation would disrupt the arson trial, we will not overturn that factual determination.
Additionally, when the lower court denied Tanksley’s request, it stated that Tanksley’s self-representation in the extortion trial was disruptive. The extortion trial concluded only one week prior to the filing of the motion for Tanksley’s counsel to withdraw. The judge made his ruling on the matter only nineteen days after the extortion trial ended. Plus, during the course of both the extortion and the arson cases, the judge conducted some hearings on both matters at the same proceeding. Because the two cases were so intertwined, we cannot expect the judge to completely block from his mind related information and impressions he obtained in an associated judicial proceeding. See Goldman v. Bryan, 104 Nev. 644, 653, 764 P.2d 1296, 1301 (1988) (holding that a judge’s knowledge and awareness of facts acquired through participation in a related judicial proceeding, while acting in one’s official judicial capacity, does not require disqualification from a subsequent proceeding).
Accordingly, we conclude that Tanksley’s right to self-representation was not violated.

Juror misconduct

During deliberations, the jury voted on the case and eleven jurors voted guilty, while one juror, Dave Bacon (“Bacon”), voted not guilty. During a dinner break shortly after this vote, Bacon went home, ignited some mattress stuffing to test if it was flammable, and upon returning from the break informed the jury that the mattress stuffing ignited immediately.
The jury continued to deliberate. Another vote was taken with the same results as prior to the break; Bacon was the only juror to vote not guilty. Shortly thereafter, Bacon left the jury room for approximately ten minutes. Apparently, during his absence, the other jurors discussed the possibility of contacting the judge if Bacon returned with a not guilty verdict. Two juror affidavits stated that Bacon was unaware of the jury’s intent to inform the judge of Bacon’s misconduct.
*1003 When Bacon returned to the jury room to continue deliberations, another vote was taken wherein all twelve jurors voted guilty.
On April 6, 1995, Tanksley filed a motion for a new trial premised on the juror misconduct. The district judge denied the motion, stating that the misconduct was harmless beyond a reasonable doubt.
“Not every incidence of juror misconduct requires the grant of a new trial.” Barker v. State, 95 Nev. 309, 313, 594 P.2d 719, 721 (1979). This court has held that a new trial need not be granted if it appears beyond a reasonable doubt that no prejudice occurred. Id. Such a determination is a question of fact for the court and will not be reversed on appeal absent an abuse of discretion. McCabe v. State, 98 Nev. 604, 608, 655 P.2d 536, 538 (1982).
We conclude that the district court did not err by concluding the juror misconduct was harmless beyond a reasonable doubt. Our dissenting colleague states, “It seems probable to me that the juror’s independent test on the mattress stuffing influenced his vote, and it may have reinforced the opinion of the other jurors when he communicated the test results to them.” With all due respect, we conclude it is improbable that the juror’s test had the supposed effect the dissent contemplates.
First, after Bacon had performed the experiment, the results of which reinforced the State’s case, Bacon again voted not guilty when he returned from the dinner break. It was only after further deliberations that Bacon changed his vote to guilty. Therefore, the experiment seemed to play no role in Bacon’s decision.
Second, prior to the experiment, eleven other jurors voted guilty. Therefore, Bacon’s experiment did not induce any of the jurors to change their vote to guilty. Accordingly, we conclude the misconduct did not prejudice Tanksley and the district court did not err in denying Tanksley’s motion for a new trial.

Adjudication as a habitual criminal

Based on the fact that Tanksley had three prior felonies, the district court adjudicated Tanksley a habitual criminal pursuant to NRS 207.010 and sentenced him to life in prison with the possibility of parole. Tanksley was convicted of criminal mischief[2] in *1004 1977, aggravated assault[3] in 1982, and being an ex-felon in possession of a firearm in 1990. Tanksley appeals his status as a habitual criminal, contending that his prior three felonies are old and stale, and two of the prior convictions are non-violent.
We have held, “One facing adjudication as a habitual criminal ... is at the mercy of the court and is thus subject to the broadest kind of judicial discretion. ” Clark v. State, 109 Nev. 426, 428, 851 P.2d 426, 427 (1993) (emphasis added). The statute contains no express limitation on the judge’s discretion. French v. State, 98 Nev. 235, 237, 645 P.2d 440, 441 (1982).
The purpose of the habitual criminal statute is to increase sanctions for the recidivist and to discourage repeat offenders. Odoms v. State, 102 Nev. 27, 32, 714 P.2d 568, 571 (1986). Tanksley was convicted of three prior felonies and, therefore, fulfills the requirements of NRS 207.010. Accordingly, we conclude that the district court did not abuse its very broad discretion in determining that a habitual criminal adjudication would serve the purpose of discouraging this repeat offender.
We have considered Tanksley’s other issues on appeal and find them to be without merit. Accordingly, we affirm Tanksley’s judgment of conviction.
Shearing, C. J., and Maupin, J., concur.

 We find it interesting to note that Tanksley has appealed the same district court judge’s decision to grant Tanksley’s request for self-representation in the extortion trial.

 This conviction resulted from Tanksley intentionally damaging and destroying plumbing fixtures and glass windows while incarcerated in a Texas jail.

 The record on appeal does not provide the facts surrounding the assault; however, the State’s answering brief claims that Tanksley sharpened a toothbrush into a shiv and attacked someone with it. Tanksley alleges that he threatened a man with the shiv, but did not injure him.