An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

NEILL SAMUELL,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 62374

**FILED**

DEC 1 0 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

*ORDER OF AFFIRMANCE*

This is an appeal from a judgment of conviction, pursuant to a jury trial, of theft. Eighth Judicial District Court, Clark County; Jessie Elizabeth Walsh, Judge.

Appellant Neill Samuell argues that the district court abused its discretion by declining to appoint substitute counsel, permitting the State to join charges involving two different victims, denying a continuance when Samuell's investigator did not complete all of the investigative tasks that Samuell directed, and sentencing Samuell under the large habitual criminal statute. Samuell further argues that his sentence is cruel and unusual and that cumulative error compels reversal. We disagree.

Samuell argues that the district court abused its discretion by declining to appoint substitute counsel after a "communication breakdown and irreparable relationship" developed between Samuell and his court-appointed counsel. In determining whether the district court abused its discretion in denying a motion for substitution of court-appointed counsel, this court considers the extent of alleged conflict, the adequacy of the

SUPREME COURT
OF
NEVADA

(O) 1947A

14-40276

district court's inquiry into request, and the timeliness of the defendant's motion. *Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004).

Our review of the record shows that the conflict between appointed counsel and Samuell primarily stemmed from Samuell repeatedly insisting on controlling the daily conduct of his defense and refusing to cooperate with counsel based on his belief that counsel was deficient because counsel declined to implement the tactics that he wanted.[1] The defendant may not base a request to substitute court-appointed counsel on a refusal to cooperate with counsel. *Gallego v. State*, 117 Nev. 348, 363, 23 P.3d 227, 237 (2001), *abrogated on other grounds by Nunnery v. State*, 127 Nev. ___, 263 P.3d 235 (2011). Nor can a disagreement over tactical decisions give rise to an irreconcilable conflict considering the general rule that counsel alone is entrusted with tactical decisions concerning the day-to-day conduct of the defense. *Cf. Rhyne v. State*, 118 Nev. 1, 8, 38 P.3d 163, 167 (2002) (recognizing the rule that the trial lawyer alone is entrusted with tactical decisions concerning the day-to-day conduct of the defense). We therefore agree with the district court's assessment that Samuell's allegations did not reflect a legitimate conflict. The record also shows that the district court provided an adequate inquiry into Samuell's request when it held a hearing during which it considered his memorandum alleging deficiencies in his representation and statements from appointed counsel. Despite having timely sought substitute counsel, we conclude that Samuell has not shown that good cause mandated appointing substitute counsel and, accordingly, that the

---

[1]The district court did not find Samuell's allegation that appointed counsel used racial epithets credible.

district court did not abuse its discretion in declining to substitute counsel. *Young*, 120 Nev. at 963, 102 P.3d at 576.[2]

Samuell argues that it was an abuse of discretion for the district court to permit the State to join charges as to each victim because the evidence would not have been cross-admissible and the State would not be able to say that the offenses were committed in same way against both victims. We disagree.

The district court's decision to join counts is reviewed for an abuse of discretion. *Tabish v. State*, 119 Nev. 293, 302, 72 P.3d 584, 589-90 (2003). The appellant bears a heavy burden of showing that the district court abused its discretion, and misjoinder warrants reversal only if the joinder has a "substantial and injurious effect or influence in determining the jury's verdict." *Id.* (quotation marks omitted). NRS 173.115(2) permits joinder of two or more offenses where the offenses are based on "two or more acts or transactions connected together or constituting parts of a common scheme or plan." Two crimes are "connected together" if evidence of either crime would be admissible in a separate trial for the other. *Weber v. State*, 121 Nev. 554, 573, 119 P.3d 107, 120 (2005). A

---

[2]After the district court denied the motion to substitute counsel, Samuell sought to represent himself. The district court granted that request after a *Faretta* canvass. Samuell now suggests that he was highly prejudiced by his self-representation. He is not entitled to relief, as he was properly canvassed and counseled about the risks of representing himself. *See Faretta v. California*, 422 U.S. 806, 835-36 (1975); *Arajakis v. State*, 108 Nev. 976, 980, 843 P.2d 800, 803 (1992). Samuell persisted despite the district court's strong warning and is accordingly responsible for the consequences of his decision. *See Faretta*, 422 U.S. at 834 (recognizing that "although he may conduct his own defense ultimately to his own detriment, his choice must be honored").

"common scheme" is a "design or plan formed to accomplish some purpose," and a "plan" is a "method of design or action, procedure, or arrangement for accomplishment of a particular act or object." *Id.* (quotation marks omitted).

In this case, joinder can be sustained on either ground set forth in NRS 173.115(2). First, the offenses are connected together because the evidence of each would be cross-admissible in a separate trial for the other. The separate transactions are similar enough to prove motive, intent, preparation, and plan and therefore would have been relevant at separate trials; the separate transactions were proven by more than clear and convincing evidence; and evidence of each would not be unfairly prejudicial in a separate trial for the other offense. *See Weber,* 121 Nev. at 573, 119 P.3d at 120 (using test for admissibility of prior bad act evidence under NRS 48.045(2) to determine whether two or more offenses are cross-admissible and therefore connected together for purposes of joinder). Second, the separate transactions reflect a common scheme or plan. In particular, the evidence depicts a "'[m]ethod of putting into effect an intention.'" *Id.* at 572, 119 P.3d at 120 (quoting *Black's Law Dictionary* 796 (abr. 6th ed. 1991)). Samuell would steal from female tourists using fake casino chips by talking about faith and religious charity to elicit their trust, showing them large denominations of fake casino chips, persuading them to show him large amounts of cash under the promise that he would pay ten-to-one for each dollar shown to him, and departing through the same bathroom on the Flamingo Hotel and Casino floor after giving a large-denomination fake casino chip to the women as security that he would return. Thus, we conclude that the

district court did not abuse its discretion in granting the State's motion to consolidate the charges against Samuell.[3]

Samuell argues that it was an abuse of discretion to deny his motion for a continuance when his investigator did not complete all of the investigative tasks that Samuell had requested. We review the district court's denial a request for a continuance for an abuse of discretion. *Higgs v. State*, 126 Nev. ___, ___, 222 P.3d 648, 653 (2010). There is no abuse of discretion if the defendant fails to demonstrate that he was prejudiced by the denial. *Id.* Samuell urges that his investigator did not have enough time to complete the investigation, in particular to obtain phone records that would allegedly corroborate his account of purchasing cocaine to use with one of the victims, which he intended to use to impeach the victim's testimony. It is unclear, however, that the phone records would further his defense. Not only would this line of impeachment implicate him in uncharged criminal conduct, but Samuell was able to pursue this line of impeachment at trial without the phone records and there is no reason to believe that the phone records would significantly corroborate his factual account. Further, the evidence does not tend to exculpate him to any degree. We conclude that Samuell has failed to show that he was prejudiced by the district court's denial of his motion for a continuance.

Samuell argues that the district court abused its discretion in sentencing him under the habitual criminal statute when all but one of his prior felony convictions occurred more than thirty years ago. The adjudication as a habitual criminal is "subject to the broadest kind of

---

[3]Samuell's asserted wish to testify on one charge but not the other does not warrant severance. *See Honeycutt v. State*, 118 Nev. 660, 669, 56 P.3d 362, 368 (2002).

judicial discretion." *Tanksley v. State*, 113 Nev. 997, 1004, 946 P.2d 148, 152 (1997) (internal quotation marks and citations omitted). Samuell's arguments are not persuasive considering his history of recidivism, including 13 prior felony convictions, several of which were for violent offenses. Although many of the prior convictions were remote in time, that is because Samuell spent much of the preceding three decades in prison in California and Florida. The remoteness of those convictions is not particularly significant given that since his release, Samuell has been convicted of felony pandering and four misdemeanors, including battery and assault and battery. Nevada's habitual criminal statute was intended to impose additional penalties in situations like this one. *See* NRS 207.010(1)(b); *Tanksley*, 113 Nev. at 1004, 946 P.2d at 152 ("The purpose of the habitual criminal statute is to increase sanctions for the recidivist and to discourage repeat offenders."); *Odoms v. State*, 102 Nev. 27, 33, 714 P.2d 568, 572 (1986) (noting that "society has the right to remove from its ranks for a longer time those who refuse to conform to a lawful mode of living" (internal quotation marks omitted)). Considering Samuell's extreme recidivism, we conclude that the district court properly exercised its discretion. *See Tanksley*, 113 Nev. at 1004, 946 P.2d at 152.

Samuell argues that it was cruel and unusual to sentence him to two consecutive terms of life without parole under the large habitual criminal statute for theft offenses. A sentence that is within the statutory limits is not "'cruel and unusual punishment unless the statute fixing punishment is unconstitutional or the sentence is so unreasonably disproportionate to the offense as to shock the conscience.'" *Blume v. State*, 112 Nev. 472, 475, 915 P.2d 282, 284 (1996) (quoting *Culverson v. State*, 95 Nev. 433, 435, 596 P.2d 220, 221-22 (1979)); *see also Harmelin v.*

SUPREME COURT
OF
NEVADA

(O) 1947A

6

*Michigan*, 501 U.S. 957, 1000-01 (1991) (plurality opinion) (explaining that the Eighth Amendment does not require strict proportionality between crime and sentence; it forbids only an extreme sentence that is grossly disproportionate to the crime). The district court imposed a sentence that accorded with the statutory limits for the offense of theft and the large habitual criminal statute. NRS 205.0832; NRS 207.010(1)(b). Samuell does not argue that either statute is unconstitutional. And in light of the seriousness and large number of Samuell's prior felony convictions, we conclude that the sentence imposed is not so grossly disproportionate to the crimes and Samuell's history of recidivism as to constitute cruel or unusual punishment. *See Ewing v. California*, 538 U.S. 11, 29 (2003) (plurality opinion); *Sims v. State*, 107 Nev. 438, 814 P.2d 63 (1991) (affirming a sentence of life without parole for grand larceny involving the theft of a purse and wallet containing $476, adjudicated under the habitual criminal statute).

Samuell argues that cumulative error warrants relief. Having found no error by the district court, we conclude that Samuell has failed to demonstrate any cumulative error.

Having considered Samuell's contentions and concluded that they are without merit, we

ORDER the judgment of conviction AFFIRMED.

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Saitta

cc:    Hon. Jessie Elizabeth Walsh, District Judge
Clark County Public Defender
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk

Supreme Court
OF
Nevada

(O) 1947A

8