# IN THE SUPREME COURT OF THE STATE OF NEVADA

JERRY DORAN POUGH, SR.,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 66718

FILED

DEC 0 1 2017

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of first-degree murder with the use of a deadly weapon. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge. Appellant Jerry Pough raises several claims on appeal. We conclude that no relief is warranted and affirm.

*Self-representation*

Pough contends that the lower courts abused their discretion by allowing him to represent himself even though he is mentally ill. A brief overview of the relevant facts provides context for our decision.

Pough's competency to stand trial was questioned before his preliminary hearing in the justice court and the matter was referred to the district court for a competency determination. In August 2011, the competency court judge heard testimony that Pough had been diagnosed with schizophrenia before his incarceration. Pough's primary care physician and a court-appointed expert testified that Pough showed symptoms of schizophrenia including delusions (he believed someone was injecting poisonous gases into his apartment and that people were trying to inject him with various poisons or diseases) and hallucinations (he heard voices telling him to do things). The doctors at Lake's Crossing, however, did not diagnose Pough with schizophrenia. The competency court judge

found Pough competent to stand trial, but noted that he was likely mentally ill.

After the case was remanded to the justice court, Pough asked to represent himself. The justice of the peace granted the request after a thorough canvass. The State then proceeded by grand jury and the case was docketed in the district court under a new case number. Questions regarding Pough's competency to stand trial and his mental health were repeatedly raised thereafter. In February 2013, after Pough was physically removed from the courtroom, bit a marshal, and engaged in a bizarre display of hysterical laughter, the district court judge, Judge Ellsworth, determined that he was not competent to stand trial. He was sent to Lake's Crossing for evaluation, but the ensuing report concluded that he was competent and was not schizophrenic. Upon his return from Lake's Crossing, Judge Ellsworth re-canvassed Pough about his desire to represent himself. During the canvass, the judge asked Pough whether he had been diagnosed as mentally ill before his incarceration. Pough indicated he had no mental health history. His response contradicted the testimony presented at the 2011 competency hearing. Apparently unaware of the prior testimony and based on her understanding that Pough was not mentally ill, Judge Ellsworth permitted him to dismiss standby counsel and continue to represent himself. The State later petitioned the district court to appoint counsel for Pough over his objection. At a hearing on the State's motion, Pough again denied that he had been diagnosed with any mental illness. Trial began in February 2014 in front of a different district court judge.[1]

---

[1]It seems the district court judges in this case were not fully aware of the testimony elicited at the August 2011 competency hearing about

Supreme Court
OF
Nevada

(O) 1947A

Pough first claims that he did not validly waive his right to counsel. We disagree. "In order for a defendant's waiver of right to counsel to withstand constitutional scrutiny, the judge need only be convinced that the defendant made his decision with a clear comprehension of the attendant risks." *Tanksley v. State*, 113 Nev. 997, 1001, 946 P.2d 148, 150 (1997) (internal quotation marks omitted). Pough was canvassed about his desire to represent himself on several occasions. Each time, he stated that he understood the risks of self-representation. Nothing in the record suggests that Pough's mental illness kept him from understanding the risks of self-representation or otherwise making a knowing, voluntary, and intelligent decision. *See Hooks v. State*, 124 Nev. 48, 54, 176 P.3d 1081, 1084 (2008) ("The validity of a defendant's waiver of the right to counsel depends on the facts and circumstances of each case, including the defendant's background, experience, and conduct."). Giving deference to the lower courts' decisions, we conclude that they did not err. *See id.* at 55, 176 P.3d at 1085 (explaining that this court considers the record as a whole and gives deference to the district court's decision regarding self-representation).

Second, Pough claims that the lower courts failed to adequately inquire into his complaints about counsel before granting his self-representation requests. Having reviewed the record, we conclude that the

---

Pough's history of schizophrenia. This is concerning, because when a mentally ill defendant is permitted to represent himself and dismiss standby counsel the responsibility for evaluating his ongoing competency falls on the judge's shoulders. It is therefore vital that judges have accurate and complete information regarding a defendant's mental health. We urge the Eighth Judicial District Court to take reasonable steps to ensure that defendants who have been diagnosed as mentally ill are not relied upon as the source of information about the history of their mental illness.

judges who considered Pough's requests adequately inquired into his issues with his attorneys. *See generally Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004) (recognizing that the trial court must adequately inquire into the defendant's reasons for wanting to dismiss counsel). Pough fails to demonstrate that those judges had a duty to try to repair his relationship with his attorneys when his decision to dismiss counsel was voluntary. *See* SCR 253 (setting forth guidelines a court should follow when a defendant seeks to represent himself at trial). Regardless, the record does not suggest that the judges could have said or done anything to change Pough's decision to represent himself.

Third, Pough argues that Judge Ellsworth should have denied his self-representation request based on his mental illness. As support, he relies on *Indiana v. Edwards*, 554 U.S. 164 (2008). Although *Edwards* "*permits* States to insist upon representation by counsel for those competent enough to stand trial . . . but who still suffer from severe mental illness to the point where they are not competent to conduct trial proceedings by themselves," it does not *require* States to do so. *Id.* at 178 (emphasis added and internal quotation marks omitted). Current Nevada law does not allow the trial courts discretion to insist upon representation by counsel for a defendant who is competent to stand trial but not competent enough to personally conduct trial proceedings due to a severe mental illness, recognizing instead that a defendant has an "*unqualified* right to represent himself at trial so long as his waiver of counsel is intelligent and voluntary." *Tanksley*, 113 Nev. at 1000, 946 P.2d at 150 (emphasis added). As explained above, Pough validly waived his right to counsel. Thus, Judge Ellsworth's decision was correct under current Nevada law.

To the extent Pough asks us to give trial courts the discretion to insist on counsel for defendants with severe mental illnesses as allowed

 

by *Edwards*, we decline to do so at this time. The parties do not identify compelling reasons for or against allowing that discretion, nor do they suggest a workable test for determining whether the district court properly exercised that discretion. Although our independent research has identified several tests that have developed in the years since *Edwards*, including one recently recommended by the American Bar Association, *see* Christopher Slobogin, *The American Bar Association's Criminal Justice Mental Health Standards: Revisions for the Twenty-First Century*, 44 Hastings Const. L.Q. 1, 34 (2016), we do not believe it is appropriate to adopt a test that has not been subjected to meaningful adversarial scrutiny on such an important issue.

*Sufficiency of the evidence*

Pough contends that insufficient evidence supports his conviction. Our review of the record on appeal, however, reveals sufficient evidence to establish guilt beyond a reasonable doubt as determined by a rational trier of fact. *See Origel-Candido v. State*, 114 Nev. 378, 381, 956 P.2d 1378, 1380 (1998); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The State presented evidence that Pough, his adult son, and two witnesses were driving home after a night out. Pough, who was angry with his son for driving in the wrong direction, pulled out a firearm. One of the witnesses testified that he saw Pough raise the firearm and shoot his son in the head. Viewed in the light most favorable to the State, a rational trier of fact could have concluded based on these facts that Pough committed a willful, deliberate, and premeditated murder. *See* NRS 200.010 ("Murder is the unlawful killing of a human being with malice aforethought."); NRS 200.020(1) ("Express malice is that deliberate intention unlawfully to take away the life of a fellow creature."); NRS 200.030(1)(a) (first-degree murder is a willful, deliberate, and premeditated killing). Although the other

witness testified that she saw Pough's son reach for the gun before it went off, arguably supporting Pough's claim that the shooting was an accident, "it is the function of the jury, not the appellate court, to weigh the evidence and pass upon the credibility of the witness[es]." *Walker v. State*, 91 Nev. 724, 726, 542 P.2d 438, 438-39 (1975). Moreover, the evidence established that there were multiple gunshots, supporting the State's theory that the killing was not accidental. The jury's verdict will not be disturbed on appeal where, as here, substantial evidence supports the verdict. *See Bolden v. State*, 97 Nev. 71, 73, 624 P.2d 20, 20 (1981); *see also McNair v. State*, 108 Nev. 53, 56, 825 P.2d 571, 573 (1992).

*Lack of resources*

Pough contends that the district court failed to provide him with adequate resources to represent himself. We disagree. Our review of the record indicates that the district court went through considerable effort to ensure that Pough was provided with necessary resources to defend himself. *See Milton v. Morris*, 767 F.2d 1443, 1446 (9th Cir. 1985) ("The rights to notice, confrontation, and compulsory process mean, at a minimum, that the time to prepare and some access to materials and witnesses are fundamental to a meaningful right of representation." (internal quotation marks omitted)). The difficulties Pough encountered are obstructions that naturally resulted from being incarcerated. We conclude that no relief is warranted on this claim.

*Speedy trial*

Pough contends that the district court violated his right to a speedy trial. "In determining whether a criminal defendant has been denied the right to a speedy trial, this court must consider four factors: the length of the delay, the reason for the delay, the defendant's assertion of his right to a speedy trial, and the prejudice to the defendant caused by the

delay." *State v. Fain*, 105 Nev. 567, 568, 779 P.2d 965, 966 (1989) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Regarding the first two factors, although the delay between accusation and trial was substantial, almost all of it was attributable to Pough due to questions about his competency, *see* NRS 178.405 (requiring suspension of the proceedings when doubt arises regarding the defendant's competence), or his requests for continuances. The rest of the delay was apparently related to issues with the district court's calendar, and Pough explicitly or implicitly agreed to that delay. *See Bailey v. State*, 94 Nev. 323, 324, 579 P.2d 1247, 1248 (1978) (holding that a "224-day delay was not inordinate due to the congestion of the trial calendar"). Regarding the third factor, Pough did not assert his speedy-trial right in an unequivocal manner; rather, he asserted the right while simultaneously requesting that the proceedings be stayed. Finally, Pough does not explain how he was prejudiced, *see Sheriff, Clark Cty. v. Berman*, 99 Nev. 102, 107, 659 P.2d 298, 301 (1983) ("While a showing of prejudice to the defense is not essential, courts may weigh such a showing (or its absence) more heavily than other factors."), and this is not a case where prejudice should be presumed. We conclude that no relief is warranted on this claim.

*Restriction of confrontation*

Pough contends that the district court unreasonably interfered with his questioning of witnesses. Pough did not object on this ground and fails to demonstrate plain error. *See Browning v. State*, 124 Nev. 517, 533, 188 P.3d 60, 71 (2008) ("Generally, the failure to object precludes appellate review absent plain error."). Pough often struggled to frame his questions and asked about matters which went beyond the appropriate scope of examination. The district court intervened to prevent inappropriate matters from being discussed in front of the jury and to move trial along.

*See Duckett v. State*, 104 Nev. 6, 13, 752 P.2d 752, 756 (1988) (holding that it is not inappropriate for the district court to ask questions when it feels the need to clarify matters or expedite trial). We conclude that no relief is warranted on this claim.

*Admission of evidence*

Pough contends that his right to due process was violated at his sentencing hearing when the prosecutor admitted his arrest record. Pough did not object and fails to demonstrate plain error. *See Browning*, 124 Nev. at 533, 188 P.3d at 71. At a penalty hearing, the jury may consider "any other matter which the court deems relevant to the sentence, whether or not the evidence is ordinarily admissible." NRS 175.552(3). This includes uncharged offenses. *Nunnery v. State*, 127 Nev. 749, 769, 263 P.3d 235, 249 (2011) (recognizing that uncharged crimes may be admitted at a penalty hearing as "other matter evidence"); *see generally Denson v. State*, 112 Nev. 489, 494, 915 P.2d 284, 287 (1996) ("[A] district court has wide discretion to consider prior uncharged crimes during sentencing.").

Having concluded that no relief is warranted,[2] we

ORDER the judgment of conviction AFFIRMED.

_____, J.
Douglas

_____, J.
Gibbons

_____, J.
Pickering

_____

[2]We decline Pough's invitation to revisit *Blandino v. State*, 112 Nev. 352, 354, 914 P.2d 624, 626 (1996), which holds that criminal defendants do not have a right to self-representation on appeal and requires that they be represented by counsel on direct appeal from a judgment of conviction.

SUPREME COURT
OF
NEVADA

(O) 1947A

cc: Hon. Douglas W. Herndon, District Judge
Hon. Carolyn Ellsworth, District Judge
Terrence M. Jackson
Attorney General/Carson City
Clark County District Attorney
Eighth District Court Clerk